RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

BRIAN V. CHURCH, ISB #9391
Lead Deputy Attorney General
DAVID J. MYERS, ISB #6528
Deputy Attorney General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
brian.church@ag.idaho.gov
david.myers@ag.idaho.gov

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ST. LUKE'S HEALTH SYSTEM, LTD.,<br><br>*Plaintiff,*<br><br>v.<br><br>RAÚL LABRADOR, Attorney General of the State of Idaho,<br><br>*Defendant.* | Case No. 1:25-cv-00015-BLW<br><br>**DEFENDANT'S RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER [DKT. 31]** |

**INTRODUCTION**

In St. Luke's original motion for a preliminary injunction, it wrote that its request for a preliminary injunction is "modest" in that "it seeks an injunction identical to the one already in effect in *United States v. Idaho.*" Dkt. 2-1 at 1. Now that it appears likely that the *United States v. Idaho* case will be dismissed, along with the injunction in that case, and that the United States is abandoning its erroneous interpretation that EMTALA requires abortion, St. Luke's request is no longer modest. It is now seeking to usurp the role of the Idaho Legislature in setting statewide medical standards of care, determine for itself that it can ignore Idaho criminal statutes merely by entering into a contract with parties other than the State of Idaho, and reinterpret a 40-plus-year-old statute to require abortions when the only mention in the statute to unborn life is the requirement to *protect* unborn life, not to terminate that life. To be clear, St. Luke's request is not modest. It is a brazen attempt to declare that it is above the law. They are asking the Court to declare that it is not required to comply with Idaho's criminal statutes, which, other than when *Roe v. Wade* was in effect, have protected the lives of unborn children by prohibiting abortion except to save the life of the mother since the 19th century, for well over a century. The Court should turn away St. Luke's attempts to declare itself above the law and deny its request for a TRO.

**ARGUMENT**

The standard for issuing a TRO is the same as for issuing a preliminary injunction. *See, e.g., Stuhlbarg Intern. Sales Co., Inc., v. John D. Brush and Co., Inc*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). St. Luke's must therefore prove that "[it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities

tips in [its] favor, and that an injunction is in the public interest." *Winter v Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In previous briefing, the Attorney General has extensively addressed the fact that St. Luke's in this case lacks standing and it is not likely to succeed on the merits. Among other reasons, St. Luke's is not likely to succeed on the merits because EMTALA does not mandate abortions; it does not conflict with Idaho's Defense of Life Act; it does not create a standard of care; and the spending clause does not allow St. Luke's to contract its way out of complying with Idaho's laws. Given the limited amount of time to respond to St. Luke's motion, these arguments will not be repeated here. The State will instead limit its argument to issues unique to St. Luke's request for a TRO.

### I. The Court Should Deny the Motion for TRO and Simply Make a Decision on the Pending Motion for Preliminary Injunction after the March 5, 2025 Hearing.

St. Luke's Motion for a TRO was filed just one day before the scheduled hearing on its Motion for a Preliminary Injunction. But "a TRO 'should be restricted to ... preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bd. Of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)). Further, once the opposing party has an opportunity to be heard, once an adversarial hearing has been held, and where the "court's basis for issuing the order" is challenged, appellate courts will treat the issuance of a TRO as an appealable preliminary injunction. *Id.* at 762–63.

In this case, given the fact that a hearing on St. Luke's motion for a preliminary injunction is scheduled to be held tomorrow, the Court should decline to issue a TRO, and instead

simply make a decision on St. Luke's motion for preliminary injunction after tomorrow's hearing.

## II. St. Luke's Will Not Suffer Irreparable Harm in the Absence of a TRO.

St. Luke's argues that it would suffer irreparable harm in the absence of a TRO because it would be required to "train their staff about the change in legal obligations[.]" Dkt. 31 at 3. This is not irreparable harm. Training staff on the legal requirements applicable in a hospital setting is no harm at all. It is merely a fact of life for hospitals operating in today's legal landscape. St. Luke's must regularly train staff on legal requirements, and any argument that it is irreparable harm to have to train staff is frivolous.

St. Luke's also argues that it "would once again [be required] to airlift patients out of state should a medical emergency arise so that those patients can consider the full spectrum of medically indicated care, including termination of pregnancy."[1] *Id.* But this argument ignores the fact that Idaho law does not require hospitals to airlift patients out of state to provide life-saving care. Idaho's Defense of Life Act allows physicians to perform abortions when it is necessary to prevent the death of the mother. The physician need not be certain that death

---

[1] St. Luke's repeated claims that it had to airlift women outside the State of Idaho to receive a life-saving or health saving abortion is dubious. While the Attorney General has not been able to test these factual assertions through discovery in the instant case, in *Adkins v. State of Idaho*, Case No. CV01-23-14744 (Idaho Dist. Ct., Ada Cnty.), a St. Luke's corporate representative stated in a 30(b)(6) deposition, regarding the claim of the six women who were airlifted out of state, that she "did not 'know why [the women] chose to be transported,' and could only say that '*one of the options* would be ending the pregnancy to maintain the patient's health." Reply Brief of Appellant State of Idaho at 19, *United States v. State of Idaho,* Nos. 23-35440, 23-35450 (9th Cir. Nov. 5, 2024), Dkt. 268 (quoting deposition transcript filed in *Adkins v. State*).

Further, local media reported that for at least one of the women airlifted out of state in the situation in which St. Luke's claims abortion was the only option, the mother gave birth to twins in what media described as a wanted pregnancy.'*I think it could potentially ignite a collapse of our health care system': Abortion in Idaho*, KTVB (June 20, 2024), https://bit.ly/48kme7K.

will occur, and death need not be imminent. *Planned Parenthood Great Nw. v. State of Idaho*, 171 Idaho 374, 445, 522 P.3d 1132, 1203 (2023) (holding that the plain language of the Defense of Life Act "does not require *objective* certainty, or a particular level of immediacy, before the abortion can be "necessary" to save the woman's life") (emphasis in original). Any potential harm stemming from the misapplication and misinterpretation of Idaho's laws is on St. Luke's, not on the Attorney General.

St. Luke's argument also ignores the fact that Idaho law allows abortions in all of those previous situations cited by St. Luke's if an abortion is necessary to prevent the death of the woman. Per St. Luke's, one patient that it claims it had to airlift out of state had "severe preeclampsia[,]" such that the patient suffered risks of "severe liver failure, renal dysfunction, cerebral hemorrhage, and eventually, death." Dkt. 2-1 at 9. While the State has not had the opportunity to test these assertions through discovery or cross-examination, it appears that an abortion may have been necessary to prevent the death of the woman and there was no need to airlift her out of state. The other patients had PPROM, which can also "be *a life-threatening condition* with high risk of infection, sepsis, and bleeding from placental abruption[.]" *Id.* (emphasis added). Again, if a physician, using her good faith medical judgment, determined that an abortion was necessary to prevent the mother's death, that could have been done in Idaho, and there was no need to airlift her out of state. And, as stated above, per local media reports, one of the women was actually stabilized and able to give birth to twins, showing again that Idaho's law worked to protect the lives of those twin babies and the life of the mother. St. Luke's claims that it will have to airlift patients out of state is a misinterpretation and misapplication of Idaho's laws.

Finally, the risk of irreparable harm in this case must go back to the risk that *St. Luke's* faces—a risk of enforcement of a law against it. Now that the United States has indicated its intent to voluntarily dismiss its lawsuit against the State of Idaho, and therefore abandon its arguments that EMTALA requires an abortion, there is no threat from the United States that it will enforce EMTALA in a manner such that St. Luke's is unable to comply with both EMTALA and the Defense of Life Act. The fact of the matter is that EMTALA does not require abortions, it does not usurp the State's role in setting the standard of care, and there is no threat that the United States will assert otherwise in any enforcement action against St. Luke's. Thus, St. Luke's is unable to show irreparable harm in the absence of the issuance of a TRO.

### III. Irreparable Harm to the State of Idaho.

As part of the consideration of the balance of equities and whether the issuance of a TRO is in the public's interest, the Court also must consider the harm to the Attorney General and the people of the State of Idaho in this case. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)).

But it is not just harm to the State's interests in enforcing its statutes that is at stake here. Life is at stake. Idaho's laws allow physicians to perform abortions to prevent the death of the mother. Contrary to St. Luke's assertions that Idaho's abortion laws harm women, Dkt. 31 at 3 n.1, Idaho's laws are saving lives. In 2023, the first full year in which Idaho's abortion

laws were in effect, pregnancy-related deaths dropped by 44.4% compared to 2021.[2] Importantly, "medical error and/or denial of care were not contributing factors" in any of the pregnancy related deaths. *Id.*

Further, it must be emphasized that St. Luke's is seeking a right to terminate unborn life that the State of Idaho has deemed worthy of protection. Indeed, the State of Idaho has in no uncertain terms declared that "preborn children have interests in life, health, and well-being that should be protected." Idaho Code § 18-8802(1). For every successful abortion performed by St. Luke's in contravention of Idaho law, another unborn child has died, an unborn child that the State of Idaho has deemed worthy of protection. St. Luke's may disagree with Idaho's policy determinations, but the answer to that is at the ballot box, not by seeking to usurp the role of the Idaho Legislature through a reinterpretation of a federal law that is inapplicable to the State of Idaho or its Attorney General.

## CONCLUSION

The Court should deny St. Luke's request for a TRO.

DATED: March 4, 2025.

                              STATE OF IDAHO
                              OFFICE OF THE ATTORNEY GENERAL

                              By: /s/ *Brian V. Church*
                                  BRIAN V. CHURCH
                                  Lead Deputy Attorney General

---

[2] *Idaho MMRC Annual Report 2023*, State of Idaho Division of Occupational and Professional Licenses, at 3 (2025), available at https://dopl.idaho.gov/wp-content/uploads/2025/01/Maternal-Mortality-Report-2023.pdf. The Court can take judicial notice of the report under Fed. R. Evid. 201.

DEFENDANT'S RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER [DKT. 31] — 6

## **CERTIFICATE OF SERVICE**

I Hereby Certify that on March 4, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Wendy J. Olson
wendy.olson@stoel.com

Alaina Harrington
alaina.harrington@stoel.com

Lindsay C. Harrison
lharrison@jenner.com

Jessica Ring Amunson
jamunson@jenner.com

Sophia W. Montgomery
smontgomery@jenner.com

Ruby C. Giaquinto
rgiaquinto@jenner.com

*Attorneys for Plaintiff St. Luke's Health System*

Stephen L. Adams
sadams@gfidaholaw.com

Chad Golder
cgolder@aha.org

*Attorneys for Proposed Amici American Hospital Association, America's Essential Hospitals, and the American Association of Medical Colleges*

        /s/ *Brian V. Church*
        Brian V. Church

Defendant's Response to Motion for a Temporary Restraining Order [Dkt. 31] — 7