WENDY J. OLSON, Bar No. 7634
wendy.olson@stoel.com
ALAINA HARRINGTON, Bar No. 11879
alaina.harrington@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000

LINDSAY C. HARRISON*
lharrison@jenner.com
JESSICA RING AMUNSON*
jamunson@jenner.com
SOPHIA W. MONTGOMERY*
smontgomery@jenner.com
RUBY C. GIAQUINTO*
rgiaquinto@jenner.com
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, D.C. 20001
Telephone:  202.639.6000
*admitted pro hac vice

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ST. LUKE'S HEALTH SYSTEM, LTD., <br><br> Plaintiff, <br><br> v. <br><br> RAÚL LABRADOR, Attorney General of the State of Idaho, <br><br> Defendant. | Case No. 1:25-cv-00015-BLW <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO MODIFY TEMPORARY RESTRAINING ORDER** |

On March 4, 2025, this Court granted Plaintiff St. Luke's Health System Ltd.'s ("St. Luke's") Motion for a Temporary Restraining Order and issued the following temporary restraining order:

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO MODIFY TEMPORARY RESTRAINING ORDER - 1
128133605.1 0048059-00016

> Attorney General Raúl Labrador—and his officers, employees, and agents—are temporarily restrained from enforcing Idaho Code § 18-622(2)-(3) as applied to medical care required by the Emergency Medical Treatment and Labor Act (EMTALA), 42 U.S.C. § 1395dd. Specifically, the Attorney General, including his officers, employees, and agents, are prohibited from initiating any criminal prosecution against, attempting to suspend or revoke the professional license of, or seeking to impose any other form of liability on, any medical provider or hospital based on their performance of conduct that is defined as an "abortion" under Idaho Code § 18-604(1), but that is necessary to avoid: (i) "placing the health of" a pregnant patient "in serious jeopardy"; (ii) a "serious impairment to bodily functions" of the pregnant patient; or (iii) a "serious dysfunction of any bodily organ or part" of the pregnant patient, pursuant to 42 U.S.C. § 1395dd(e)(1)(A)(i)-(iii).

Temporary Restraining Order, ECF No. 33, at 4. Shortly thereafter, Attorney General Labrador moved to modify the TRO, claiming that it was overbroad in its application to hospitals and medical providers beyond St. Luke's and, in substance, "more burdensome than EMTALA arguably requires." *See* Mot. to Modify, ECF No. 34, at 1. Both issues were discussed at the March 5, 2025, hearing in this matter, but to aid the Court's review, St. Luke herein will briefly address each in turn.

## ARGUMENT

### I.  A Universal Injunction is Necessary to Remedy the Harm to St. Luke's.

Injunctive relief should be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994), and otherwise "workable," *North Carolina v. Covington*, 581 U.S. 486, 487 (2017) (per curiam). "[A]n injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit—even if it is not a class action—if such breadth is necessary to give prevailing parties the relief to which they are entitled." *Bresgal v. Brock*, 843 F.2d 1163, 1170-71 (9th Cir. 1987).

The Attorney General principally relies upon Justice Gorsuch's concurring opinion in *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921 (2024), to contend that the TRO sweeps more broadly than is permissible. But the TRO does not run afoul of the *Poe* concurrence's admonition that lower courts may not issue injunctions "more burdensome to the defendant than necessary to redress the plaintiff's injuries." *Id.* at 923 (Gorsuch, J., concurring) (alteration and internal quotation mark omitted). The Attorney General's stance that no conflict exists indicates that, in his own view, the TRO does not impose a serious burden. For at least three reasons, the TRO's application beyond St. Luke's is needed to fully remedy the harm to St. Luke's caused by the conflict between § 18-622 and EMTALA and to render the injunction workable.

*First*, relief would not be complete if the injunction were limited to St. Luke's. An injunction narrowed in that way would result in the diversion of pregnant patients in critical condition from facilities not covered by the injunction to St. Luke's facilities, straining their resources and ultimately resulting in additional harm to the patients St. Luke's serves. Pregnant patients rightfully concerned for their health would seek out facilities covered by the injunction, and providers at hospitals not covered by the injunction would, given the conflict between § 18-622 and EMTALA, need to transfer patients to covered facilities. This systemic problem justifies statewide relief. *See Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1502 (9th Cir. 1996) (upholding statewide relief where, absent that relief, plaintiffs would likely be subject to citations under the enjoined helmet-safety law by officers who did not inquire as to whether they were named plaintiffs in the suit); *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 618 F.3d 1066, 1083 (9th Cir. 2010) (granting relief beyond the plaintiff tribes where limited relief would cause systemic issue in administration of "pooled" gaming license scheme).

The unrebutted facts support this conclusion. Doctor Seyb attested that if the injunction were limited to St. Luke's, "hospitals that could provide stabilizing treatment would experience increased patient care needs and increased staffing needs in their emergency rooms, which may affect patient care at those hospitals." Decl. of Stacy T. Seyb ¶ 24, ECF No. 2-2. The record further supports that the influx of patients would be overwhelming for St. Luke's, which—as counsel for the Attorney General stressed at argument—operates hospitals with emergency departments in only 8 of Idaho's 44 counties and provides care for roughly 40% of Idaho's live births. *See* Mem. in Support of Mot. for Prelim. Injunction at 8, ECF No. 2-1. A hospital system equipped for that patient volume does not have unlimited ability to expand its services to account for statewide patient transfers in emergency situations in addition to the influx of patients who will affirmatively seek care from St. Luke's to preserve their treatment options.

The Attorney General suggested during this week's hearing that Dr. Seyb's prediction on this score is speculative. Not so. Dr. Seyb's declaration is based on his wealth of experience as a healthcare provider in Idaho, and, as the Court noted during the hearing, is borne out by the actual circumstances that occurred during the stay of this Court's injunction. When the two statutes coexisted, transfers occurred with alarming frequency. *Id.* ¶¶ 8-14. Those transfers took patients out of state, as was necessary at the time. *Id.* But if this Court narrowed the injunction in this case to St. Luke's alone, it is much more likely that transfers would be made to the closest facility able to provide stabilizing care, which would often be St. Luke's. There is nothing specific about or unique to St. Luke's that required the six transfers described by Dr. Seyb in his declaration. Medical emergencies requiring these difficult decisions to be made in a limited time frame could occur with any pregnant patient at any hospital. *See* Decl. of Dr. Emily Corrigan in Support of the United States' Motion for a Preliminary Injunction ¶ 22, *United States v. Idaho*, No. 22-cv-329

(D. Idaho filed Aug. 8, 2022), ECF No. 17-6. And whether at St. Luke's or another hospital system in Idaho, EMTALA requires the same stabilizing care.

In addition, the influx of patients to St. Luke's would have the unavoidable effect of harming patients. St. Luke's has an organizational mission to improve the health of the people in the communities it serves, making the harm to patients a harm to St. Luke's itself. Compl. ¶¶ 48-49. It cannot fully pursue its mission if its resources are unduly stretched and if it must devote significant additional resources to treating patients that arrive in much more emergent condition than they would otherwise because of the need to transfer them from far away locations. As stated by Dr. Seyb, if the injunction "was limited to only some of the hospitals that presently provide that care, pregnant patients would be forced to travel long distances to get emergency care, which could be detrimental to their health and well-being." Seyb Decl. ¶ 24.

In support of its Motion for a TRO, St. Luke's additionally pointed to evidence from other states showing that pregnancy becomes far more dangerous in states that do not allow physicians to terminate pregnancy when that is necessary to prevent harm to patients' health as required by EMTALA.[1] Simply put, a narrower injunction will put additional burdens, including delay and travel burdens, on pregnant patients in need of stabilizing care, which will in turn put a greater strain on the sole hospital system able to provide the full range of stabilizing care to those patients, thus impeding St. Luke's in its ability to care for patients of all kinds.

These facts make the *Poe* concurrence inapplicable. There, Justice Gorsuch reasoned that in issuing an injunction extending beyond the plaintiffs for the purpose of protecting those plaintiffs' privacy, the court had not considered "the adequacy of less intrusive" measures for

---

[1] Mot. for TRO at 3 n.1 (citing *Texas Banned Abortion. Then Sepsis Rates Soared.*, ProPublica (Feb. 20, 2025), https://www.propublica.org/article/texas-abortion-ban-sepsismaternal-mortality-analysis).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO MODIFY TEMPORARY RESTRAINING ORDER - 5
128133605.1 0048059-00016

safeguarding their privacy. *Poe*, 144 S. Ct. at 925 n.2. There is no less intrusive means of ensuring that St. Luke's is not inundated with patients in acute need from other Idaho facilities. That problem cannot be remedied by, as in *Poe*, a court action as routine as a sealing order. The Attorney General's reliance on *Poe* is therefore misplaced.[2]

*Second*, if an injunction is narrowed to cover only St. Luke's, it would present difficult administrability issues. Some St. Luke's providers have privileges at other hospitals, so will be subject to one set of rules at St. Luke's hospitals, but a different set of rules at those other hospitals. That makes an already challenging job—applying EMTALA's stabilization requirement to difficult health emergencies—even more difficult, all to the detriment of Idaho patients. *See CASA, Inc. v. Trump*, No. 25-1153, 2025 WL 654902, at *1 (4th Cir. Feb. 28, 2025) (rejecting non-universal injunction because of practical difficulties). The same is true with respect to ambulance drivers, who will need to decide where to take pregnant patients in critical condition—should they take the patient to St. Luke's, where the full range of stabilizing care will be available, even if it is a longer drive away and the patient's condition may deteriorate further than it would on a shorter drive to a hospital where the full range of stabilizing care is not available?

*Third*, the Attorney General cannot maintain both that there is no conflict between state and federal law and that a statewide injunction that is specifically directed at that conflict needlessly burdens him. The Attorney General reaffirmed during this week's hearing that he sees no conflict between the two laws. Thus, in his view, no situation exists in which the TRO would

---

[2] In reality, his reliance is doubly misplaced because, as another district court recently explained, the *Poe* concurrence's chief concern was that the injunction in that case prohibited enforcement of a state statute in its entirety, when the plaintiffs had challenged only a portion of the law. *See NADOHE v. Trump*, No. 25-cv-0333, 2025 WL 675060, at *4 (D. Md. Mar. 3, 2025). Here, the TRO is tailored to the specific constitutional deficiency that St. Luke's challenges: the conflict between § 18-622 and EMTALA's stabilization requirement.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO MODIFY TEMPORARY RESTRAINING ORDER - 6
128133605.1 0048059-00016

apply. That being the case, he cannot make out the requisite showing of harm at the existence of an injunction at all, much less its scope. *Cf. Moyle v. United States*, 144 S. Ct. 2015, 2022-23 (2024) (Barrett, J., concurring) (vacating stay because narrow extent of conflict meant that Idaho would be able to enforce its law in the majority of its applications).

## II. The TRO's Language Tracks EMTALA.

The Attorney General also takes issue with the substance of the court's injunction, which it contends goes beyond what EMTALA requires of Medicare recipients. But this injunction is identical to the one that was, until yesterday, in place in the *United States* litigation (though running against the Attorney General and his officers, employees, and agents rather than against the state). As addressed in the preliminary injunction hearing, St. Luke's does not read the TRO's language to do anything more than enjoin § 18-622 to the extent it conflicts with EMTALA. However, St. Luke's does not oppose a modification of the TRO's wording to confirm that is the injunction's effect. Specifically, St. Luke's proposes that if the Court deems modification necessary, it adopt the following alternative formulation[3]:

> Attorney General Raúl Labrador—and his officers, employees, and agents—are temporarily restrained from enforcing Idaho Code § 18-622 as applied to medical care required by the Emergency Medical Treatment and Labor Act (EMTALA), 42 U.S.C. § 1395dd. Specifically, the Attorney General, including his officers, employees, and agents, are prohibited from initiating any criminal prosecution against, attempting to suspend or revoke the professional license of, or seeking to impose any other form of liability on, any medical provider or hospital based on their performance of conduct that is defined as an "abortion" under Idaho Code § 18-604(1), but that is necessary to "stabilize" a patient presenting with an "emergency medical condition" as required by EMTALA pursuant to 42 U.S.C. § 1395dd(e)(1)(A), (3)(A).

---

[3] This formulation also omits the order's references to subsections (2) and (3) of § 18-622, which was a remnant of the preliminary injunction in the *United States* case.

## CONCLUSION

For the foregoing reasons, the Court should deny the Attorney General's motion to modify the scope of the TRO, which properly runs to all in the state. To the extent the Court deems it necessary to modify the TRO's language to more closely mirror EMTALA as set forth above, St. Luke's does not object.

Dated: March 6, 2025

Respectfully submitted,

Wendy J. Olson

/s/  *Wendy J. Olson*
Wendy J. Olson, Bar No. 7634
Alaina Harrington, Bar No. 11879
Stoel Rives LLP
101 S. Capitol Blvd.
Suite 1900
Boise, ID 83702
(208) 387-4291
wendy.olson@stoel.com

Lindsay C. Harrison*
Jessica Ring Amunson*
Sophia W. Montgomery*
Ruby C. Giaquinto*
Jenner & Block LLP
1099 New York Ave NW, Suite 900
Washington, D.C. 20001
(202) 639-6000
lharrison@jenner.com
*admitted pro hac vice

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent a notice of electronic filing to the following persons:

| | |
|---|---|
| Brian V. Church<br>brian.church@ag.idaho.gov | Chad Golder<br>cgolder@aha.org |
| David J. Meyers<br>david.myers@ag.idaho.gov | Stephen Lee Adams<br>sadams@gfidaholaw.com |
| *Attorneys for Attorney General Labrador* | *Attorneys for Amici American Hospital Association, America's Essential Hospitals, and the American Association of Medical Colleges* |

   /s/ *Wendy J. Olson*