WENDY J. OLSON, Bar No. 7634
wendy.olson@stoel.com
ALAINA HARRINGTON, Bar No. 11879
alaina.harrington@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000

LINDSAY C. HARRISON*
lharrison@jenner.com
JESSICA RING AMUNSON*
jamunson@jenner.com
SOPHIA W. MONTGOMERY*
smontgomery@jenner.com
RUBY C. GIAQUINTO*
rgiaquinto@jenner.com
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, D.C. 20001
Telephone:  202.639.6000
*admitted pro hac vice

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ST. LUKE'S HEALTH SYSTEM, LTD., <br><br> Plaintiff, <br><br> v. <br><br> RAÚL LABRADOR, Attorney General of the State of Idaho, <br><br> Defendant. | Case No. 1:25-cv-00015-BLW <br><br> **PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

Prompted by the Court's questions at oral argument on March 5, St. Luke's submits this supplemental brief to supply the Court with its position as to the role of the Commerce Clause and its role in the preemption analysis in this case.

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 1

By way of background, St. Luke's position has always been that EMTALA's preemptive force does not depend on the source of congressional power that underlies the statute. The fact that Congress legislates under the Spending Clause and imposes restrictions directly on funding recipients does not give state officials license to veto the federal prerogatives set out in that legislation. *See* St. Luke's Consolidated Response and Reply in Support of Preliminary Injunction at 12, ECF No. 27 ("Consolidated Resp."). That conclusion does not threaten the existence of federalism; if it did, such problems would have manifested already, given that the Supreme Court has long understood the Spending Clause to operate just like any other congressional power as it relates to the Supremacy Clause, even when funds flow to parties other than a state. *See United States v. Butler*, 297 U.S. 1, 65-66, 74 (1936); *Lawrence County v. Lead-Deadwood Sch. Dist. No. 40-1*, 469 U.S. 256, 269-70 (1985).

That said, even if the spending power were uniquely limited in terms of preemption, that would not render EMTALA's stabilization requirement powerless in the face of conflicting state law. That is so because EMTALA could have been enacted under a different Article I power: the Commerce Clause. *See* Consolidated Resp. at 26 n.7 (incorporating by reference arguments made by the United States on remand to the Ninth Circuit).[1] As St. Luke's explained during the hearing on its preliminary injunction motion and the Attorney General's motion to dismiss, the Court need not reach this argument to dispose of the Attorney General's Spending Clause theory. But because

---

[1] St. Luke's preserved this argument by incorporating the United States' arguments before the *en banc* Ninth Circuit, which included the lawfulness of EMTALA's preemptive force pursuant to the Commerce Clause. *See United States v. Idaho*, No. 23-35440 (9th Cir. Oct. 15, 2024), ECF No. 194, at 55-56. The Attorney General, too, has incorporated the arguments made by Idaho before the Ninth Circuit. *See* Consolidated Memorandum in Support of Motion to Dismiss Complaint [Dkt. 1] and Opposition to Motion for Preliminary Injunction [Dkt. 2], ECF No. 25-1, at 29.

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 2

the Court inquired about this issue during the argument on March 5, St. Luke's offers this briefing to assist the Court in its decision.

## ARGUMENT

### I. Spending Clause Limitations Do Not Apply when the Condition on Spending Could Be Enacted Directly.

In *Nevada v. Skinner*, 884 F.2d 445, 449 (9th Cir. 1989), the Ninth Circuit held that "if Congress has the authority under an enumerated power (other than the Spending Power) to compel the States through direct regulation to change its practices, then it may also achieve that result through the more gentle commands of the Spending Power[.]" In that case, the court confronted an argument that the Federal Aid Highway Act, by conditioning highway funds on states' adoption of a 55-mph speed limit, imposed coercive conditions attendant to an exercise of the spending power. The court sidestepped whether the anti-coercion principle limits federal spending authority. *Id.* at 447-48. That principle was "simply inapplicable" because Congress could have imposed the lower speed limit in question through an exercise of its power to regulate commerce. *Id.* at 449.

The Ninth Circuit in *Skinner* explained that the "central debate of the Spending Power cases has always been whether Congress may exercise authority *beyond* the strict limitations imposed by the other enumerated powers specified in the Constitution." *Id.* As such, it had gone unquestioned that "the federal government [could] act, under the Spending Power, within the ambit of those other enumerated powers." *Id.*; *see also Fullilove v. Klutznick*, 448 U.S. 448, 475 (1980) (opinion of Burger, C.J.) ("The reach of the Spending Power, within its sphere, is at least as broad as the regulatory powers of Congress. If, pursuant to its regulatory powers, Congress could have achieved the objectives of the . . . program, then it may do so under the Spending Power."). Simply put, *Skinner* holds that where another federal power could just as easily effectuate a spending condition as a matter of direct regulation, courts need not ask whether limits specific to the

spending power—which exist to rein in the spending authority where it reaches beyond other federal powers—are satisfied. *See Skinner*, 884 F.2d at 449 ("[I]f Congress has the authority under the Commerce Clause to order a state *directly* to comply with a particular standard . . . , we see no reason why Congress should be prohibited from reaching that same result *indirectly* by withholding funds if the state fails to comply with that standard.").

Under *Skinner*, it is irrelevant whether Congress described EMTALA as a spending statute, a commerce regulation, or neither. "Congress is not required to identify the precise source of its authority when it enacts legislation. It is the duty of Congress to promulgate legislation, and it is the function of the courts to determine whether Congress has acted within the bounds of federal power." *Id.* at 449 n.8; *see also NFIB v. Sebelius*, 567 U.S. 519, 570 (2012) ("The question of the constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise." (cleaned up)).

Applied here, *Skinner* compels the conclusion that, because EMTALA could have been enacted under the Commerce Clause (as explained below), the voluntary and knowing requirements for conditions on spending legislation are of no moment in determining whether EMTALA validly preempts Idaho law.

II. **EMTALA is a Valid Congressional Regulation of Commerce.**

Congress undoubtedly has authority under the Commerce Clause to enact EMTALA's stabilization requirement. The Medicare program regulates a complex national healthcare market in which individuals, providers, hospital systems, medical schools, insurers, and other actors are engaged in "existing commercial activity." *NFIB v. Sebelius*, 567 U.S. 519, 552 (2012). Congress routinely regulates that commercial activity under the Commerce Clause, including to preempt contrary state law. *See, e.g.*, 42 U.S.C. § 1320d-7(a) (HIPAA); 49 U.S.C. § 41713(b)(1) (Airline Deregulation Act of 1978 addressing, *e.g.*, air-ambulance services); 18 U.S.C. § 1347(a)(1)

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 4

(making it a crime to "defraud any health care benefit program"); *United States v. Bird*, 124 F.3d 667, 677-78 (5th Cir. 1997) (upholding the Freedom of Access to Clinic Entrances Act under the Commerce Clause).

EMTALA, in particular, permissibly regulates commercial activity by creating a minimum federal standard for the provision of emergency healthcare services—services that are then billed and paid for, whether by the federal government, national insurers, private parties, or other sources of funding. Moreover, "[i]t long has been settled that Congress' authority under the Commerce Clause extends to intrastate economic activities that affect interstate commerce." *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 537 (1985). EMTALA does just that. The terms under which hospitals provide emergency healthcare, which is an economic activity, affect interstate commerce by affecting the provision of healthcare in other states.

That is particularly true in this case. As this Court has already found, absent an injunction, "the capacity of hospitals in neighboring states that do not prohibit physicians from providing EMTALA-mandated care (Washington and Oregon, for example)" would be "pressured as patients may choose to cross state lines to get the emergency care they are entitled to receive under federal law." *United States v. Idaho*, 623 F. Supp. 3d 1096, 1116 (D. Idaho 2022). Indeed, the interstate effects of medical providers' inability to simultaneously comply with both EMTALA and § 18-622 were made clear when St. Luke's had to airlift six patients out of state during the time when this Court's injunction was stayed. *See* Supp. Decl. of Stacy T. Seyb ¶¶ 8-15, ECF No. 2-2.

## CONCLUSION

The Attorney General's arguments about the limits of Congress's Spending Clause authority are wrong, but in any event, Congress's authority to enact EMTALA under the Commerce Clause resolves any doubt that EMTALA is supreme federal law.

Dated: March 10, 2025                            Respectfully submitted,

Wendy J. Olson

/s/ *Wendy J. Olson*
Wendy J. Olson, Bar No. 7634
Alaina Harrington, Bar No. 11879
Stoel Rives LLP
101 S. Capitol Blvd.
Suite 1900
Boise, ID 83702
(208) 387-4291
wendy.olson@stoel.com

Lindsay C. Harrison*
Jessica Ring Amunson*
Sophia W. Montgomery*
Ruby C. Giaquinto*
Jenner & Block LLP
1099 New York Ave NW, Suite 900
Washington, D.C. 20001
(202) 639-6000
lharrison@jenner.com
*admitted pro hac vice

*Attorneys for Plaintiff*

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 6

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent a notice of electronic filing to the following persons:

Brian V. Church
brian.church@ag.idaho.gov

David J. Meyers
david.myers@ag.idaho.gov

*Attorneys for Attorney General Labrador*

Chad Golder
cgolder@aha.org

Stephen Lee Adams
sadams@gfidaholaw.com

*Attorneys for Amici American Hospital Association, America's Essential Hospitals, and the American Association of Medical Colleges*

  /s/ *Wendy J. Olson*