RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

BRIAN V. CHURCH, ISB #9391
Lead Deputy Attorney General
DAVID J. MYERS, ISB #6528
Deputy Attorney General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
brian.church@ag.idaho.gov
david.myers@ag.idaho.gov

*Attorneys for Defendant*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ST. LUKE'S HEALTH SYSTEM, LTD., <br><br> *Plaintiff,* <br><br> v. <br><br> RAÚL LABRADOR, Attorney General of the State of Idaho, <br><br> *Defendant.* | Case No. 1:25-cv-00015-BLW <br><br> **RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION [DKT. 45]** |

**ARGUMENT**

The Commerce Clause does not authorize Congress to mandate that hospitals provide abortion. The Spending Clause does not authorize Congress to override nonconsenting states' regulation of abortion. And, regardless of the alleged source of authority for EMTALA, EMTALA does not conflict with the Defense of Life Act.

**I.   The Commerce Clause does not support an abortion mandate.**

St. Luke's argues that EMTALA could have been enacted under the Commerce Clause, such that "the voluntary and knowing requirements for conditions on spending legislation are of no moment . . . ." Dkt. 45 at 4 (relying upon *Nevada v. Skinner*, 884 F.2d 445 (9th Cir. 1989)). According to St. Luke's, EMTALA regulates the practice of medicine and mandates that hospitals perform abortions in certain situations. The question then is whether Congress may direct hospitals to engage in a particular form of commerce by mandating abortions that state law, through the state's exercise of its police powers, does not permit. The answer is no.

The Supreme Court has cautioned that the Commerce Clause "must be read carefully to avoid creating a general federal authority akin to the police power." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 536 (2012). The Constitution grants Congress only the power to "regulate Commerce." U.S. CONST. art. I, § 8, cl. 3 (emphasis added). But this power "presupposes the existence of commercial activity to be regulated." *Sebelius*, 567 U.S. at 550 (opinion of Roberts, C.J.).

In *Sebelius*, Congress required individuals to purchase insurance and enter the stream of commerce, which the Supreme Court stated was beyond Congress's power under the Commerce Clause. *Id.* at 558. As Chief Justice Roberts stated, the Commerce Clause cannot be used to "compel citizens to act as the Government would have them act," *id.* at 554, nor can it be used to "force[] individuals into commerce precisely because they elected to refrain from commercial activity." *Id.* at 558. Indeed, Chief Justice Roberts's opinion makes clear that just

because an individual is engaged in one type of commercial activity (buying food, for example), that does not give Congress the power under the Commerce Clause to force an individual to buy a particular product (vegetables, for example). *Id.* at 557–58; *accord id.* at 657 (Scalia, J., dissenting) ("[T]he mere fact that we all consume food and are thus, sooner or later, participants in the 'market' for food, does not empower the Government to say when and what we will buy.").

Here, under St. Luke's theory and interpretation of EMTALA, Congress would not only be requiring participating hospitals to engage in a particular economic activity, i.e., providing abortions, but to provide that service for free to those who cannot afford it. But because EMTALA requires treatment without payment, the provision of these services does not reduce the demand for a commodity, as in *Wickard v. Filburn*, 317 U.S. 111 (1942). Ignoring state law for a moment, this requirement might be valid under the Spending Clause as it relates to St. Luke's—because St. Luke's gets access to the federal coffers through its participation in the Medicare program—but it is not a valid exercise under the Commerce Clause.

Just as the Supreme Court held that the ACA's individual mandate was not a valid assertion of Commerce Clause power because it mandated individual participation in a particular economic activity, EMTALA (under St. Luke's interpretation) could not be a valid exercise of Commerce Clause power because it also mandates a hospital's participation in a particular economic activity—providing abortions.[1] The government can no more mandate particular commercial activity by requiring hospitals to provide certain types of treatments than it

---

[1] The Attorney General, as has been extensively argued, does not believe that EMTALA mandates the provision of abortions. But taking at face value St. Luke's argument that it does create an abortion mandate clearly illustrates that EMTALA could not be a valid exercise of authority under the Commerce Clause.

can by requiring individuals to purchase insurance.[2] "The Framers gave Congress the power to regulate commerce, not to compel it[.]" *Sebelius*, 567 U.S. at 555 (opinion of Roberts, C.J.).

St. Luke's argument that EMTALA validly imposes an abortion mandate under the Commerce Clause also runs into another problem—the Commerce Clause cannot be used to abrogate the states' authority to regulate the practice of medicine. "The lesson" of a long line of Supreme Court Commerce Clause cases "is that the Commerce Clause, even when supplemented by the Necessary and Proper Clause, is not *carte blanche* for doing whatever will help achieve the ends Congress seeks by the regulation of commerce." *Sebelius*, 567 U.S. at 653 (Scalia, J., dissenting)[3]. Even if EMTALA could be a valid exercise under the Commerce Clause vis-à-vis its regulation of St. Luke's and other hospitals, the Commerce Clause could not be used to usurp the State of Idaho's regulation of the practice of medicine, an area of law wholly within the *state's* police powers. *See Linder v. U.S.*, 268 U.S. 5, 18 (1925) ("Obviously, direct control of medical practice in the states is beyond the power of the federal government."); *see also Conant v. Walters*, 309 F.3d 629, 639 (9th Cir. 2002) (recognizing "states as the primary regulators of professional conduct" involving physicians); *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 259 (2022) (returning the regulation of abortion to the states). As the Ninth Circuit has stated, this principle of federalism "imposes a duty on federal courts, whenever possible, to avoid or minimize conflict between federal and state law." *Conant*, 309 F.3d at 639. But St. Luke's argument that the Commerce Clause authorizes EMTALA to preempt state law in the situation before this Court would require this Court to ignore this

---

[2] St. Luke's assertion that EMTALA mandates a hospital's participating in providing abortions is what separates the regulatory preemption statutes and the *United States v. Bird* case cited by St. Luke's. Dkt. 45 at 4–5 (citations omitted).

[3] Between Chief Justice Roberts's opinion and Justice Scalia's dissenting opinion, five justices opined that the individual mandate was not a valid exercise of authority under the Commerce Clause.

principle of avoiding conflict between state and federal law, and to instead go out of its way to *create* a conflict between state and federal law. That is prohibited by binding precedent.

The Commerce Clause does not authorize Congress to create an abortion mandate contrary to the State's exercise of its police power to prohibit abortions.

## II. EMTALA is Spending Clause legislation.

Even more basic, however, is the fact that the Medicare Act, including EMTALA, is Spending Clause legislation, not Commerce Clause legislation. No court has analyzed EMTALA as Commerce Clause legislation. *See, e.g., Moyle v. U.S.*, 603 U.S. 324, 336–37, 347, 355, 359 (2024) (three justices advised this Court to apply Spending Clause analysis and three justices held that EMTALA is to be analyzed as Spending Clause legislation (and fails that analysis)); *United Seniors Ass'n, Inc. v. Shalala*, 2 F. Supp. 2d 39, 42 (D.D.C. 1998), *aff'd*, 182 F.3d 965 (D.C. Cir. 1999); *New York v. United States Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 565–72 (S.D.N.Y. 2019).

## III. Regardless of the alleged source of authority for EMTALA, it does not conflict with the Defense of Life Act.

St. Luke's suggests that the Defense of Life Act conflicts with EMTALA, which in its view "regulates commercial activity by creating a minimum federal standard for the provision of emergency healthcare services." Dkt. 45 at 5. But EMTALA does not create a minimum medical standard of care, nor does it affect state law regulations of the practice of medicine. The Medicare Act disavows interference with state regulation in 42 U.S.C. § 1395 (titled "Prohibition against any Federal interference"). EMTALA does not impose any national standard on any aspect of medical care, much less create a required standard for providing abortions. *See Bryant v. Adventist Health System/West*, 289 F.3d 1162, 1166 (9th Cir. 2002).

Nor, as St. Luke's suggests, is the State of Idaho "veto[ing] the federal prerogatives" of EMTALA. Dkt. 45 at 2. Given the statutory disavowal of federal interference with the practice

of medicine, finding a conflict or preemption here would grossly violate the default "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Here, we have a clear and manifest expression of the opposite purpose— to *not* supersede the historic police power of states by EMTALA, whether through the Commerce Clause, the Spending Clause, or any other source of Congressional power.[4] As the Ninth Circuit has stated, federal courts have a "duty" to "avoid or minimize conflict between federal and state law." *Conant*, 309 F.3d at 639. That "duty" requires the Court to interpret EMTALA, if possible (and it is not only possible, it is supported by the plain language of EMTALA), to avoid a conflict with Idaho's law.

EMTALA's purpose is simply to prevent patient dumping and to secure equal services between patients. *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1258 (9th Cir. 1995). The Act never even mentions abortion, but instead repeatedly looks out for the interests of the unborn child. EMTALA has no abortion-related purpose whatsoever and certainly doesn't mandate the termination of human life that the Act is also supposed to protect.

St. Luke's again goes to the well of the airlift narrative, Dkt. 45 at 5, so that narrative requires careful examination. For purposes of its preliminary injunction motion, St. Luke's must make a clear showing that there are, have been, and will be patients who:
1. Present to the emergency medical department with an **emergency medical condition** (as statutorily defined);
2. At a stage of pregnancy when the unborn child is **not yet viable**[5];
3. Are **not stable** enough to transfer;

---

[4] The 2022 HHS Guidance that prompted the EMTALA litigation "is new policy; it does not 'merely restate' EMTALA's requirements." *Texas v. Becerra*, 89 F.4th 529, 541 (5th Cir. 2024). Without the new policy, issued approximately forty years after EMTALA was enacted, EMTALA never required abortions contrary to state laws.

[5] Because post viability, EMTALA requires delivery, not abortion. *See Moyle*, 603 U.S. at 335 n.* (United States clarifications in brief and oral argument).

4. As to whom, "then and there"[6], **no treatment other than abortion will stabilize their condition (as statutorily defined)**; but
5. Somehow **do not fall within the life-saving exception of the Defense of Life Act**.[7]

St. Luke's has made no attempt to make this required showing as to the airlifted patients or any others. That necessarily means EMTALA has never required St. Luke's to perform a pre-viability abortion to stabilize an emergency medical condition, which demonstrates that there is no conflict and no preemption issue. By St. Luke's own pleading, the Defense of Life Act did not prevent St. Luke's from providing necessary medical care to the patients, and it does not conflict with EMTALA.

## CONCLUSION

For the foregoing additional reasons, St. Luke's motion for preliminary injunction should be denied.

---

[6] *Id.* ("EMTALA requires abortion only in an 'emergency acute medical situation,' where a woman's health is in jeopardy if she does not receive an abortion 'then and there.'").

[7] This means that a St. Luke's physician could not determine, in his subjective good faith medical judgment and based on the facts known to the physician at the time, that the abortion was necessary to prevent the death of the pregnant woman, even though (a) "[t]he plain language of the above provision leaves wide room for the physician's [subjective] 'good faith medical judgment'"; "does not require objective certainty, or a particular level of immediacy, before the abortion can be 'necessary' to save the woman's life"; and "uses broad language to allow for the 'clinical judgment that physicians are routinely called upon to make for proper treatment of their patients, [providing] room that operates for the benefit, not the disadvantage, of the pregnant woman"; (b) "a 'medical consensus' on what is 'necessary' to prevent the death of the woman when it comes to abortion is not required"; and (c) "there is no 'certain percent chance' requirement that death will occur under the term 'necessary.'" *Planned Parenthood Great Nw. v. State*, 171 Idaho 374, 445–46 (2023) (citation omitted).

DATED: March 14, 2025.

        STATE OF IDAHO
        OFFICE OF THE ATTORNEY GENERAL

By: */s/ Brian V. Church*
    BRIAN V. CHURCH
    Lead Deputy Attorney General

By: */s/ David J. Myers*
    DAVID J. MYERS
    Deputy Attorney General

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 14, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Wendy J. Olson
wendy.olson@stoel.com

Alaina Harrington
alaina.harrington@stoel.com

Lindsay C. Harrison
lharrison@jenner.com

Jessica Ring Amunson
jamunson@jenner.com

Sophia W. Montgomery
smontgomery@jenner.com

Ruby C. Giaquinto
rgiaquinto@jenner.com

*Attorneys for Plaintiff St. Luke's Health System*

Stephen L. Adams
sadams@gfidaholaw.com

Chad Golder
cgolder@aha.org

*Attorneys for Proposed Amici American Hospital Association, America's Essential Hospitals, and the American Association of Medical Colleges*

/s/ *Brian V. Church*
Brian V. Church