WENDY J. OLSON, Bar No. 7634
wendy.olson@stoel.com
ALAINA HARRINGTON, Bar No. 11879
alaina.harrington@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000

LINDSAY C. HARRISON (*admitted pro hac vice*)
lharrison@jenner.com
JESSICA RING AMUNSON (*admitted pro hac vice*)
jamunson@jenner.com
SOPHIA W. MONTGOMERY (*admitted pro hac vice*)
smontgomery@jenner.com
RUBY C. GIAQUINTO (*admitted pro hac vice*)
rgiaquinto@jenner.com
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, D.C. 20001
Telephone:  202.639.6000

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ST. LUKE'S HEALTH SYSTEM, LTD., <br><br> Plaintiff, <br><br> v. <br><br> RAÚL LABRADOR, Attorney General of the State of Idaho, <br><br> Defendant. | Case No. 1:25-cv-00015-BLW <br><br> **PLAINTIFF'S MOTION FOR ENTRY OF PROTECTIVE ORDER** |

St. Luke's Health System, Ltd. ("Plaintiff") moves the Court for entry of a protective order in the form submitted as **Exhibit 1**. Federal Rule of Civil Procedure 26(c)(1) permits a court, upon a showing of good cause, to enter a protective order requiring that certain

information be produced only in a specified way. For the reasons set forth below, good cause exists for entry of the proposed protective order.

## INTRODUCTION

This case concerns a federal law mandating the provision of emergency stabilizing health care to pregnant patients in need, and the Idaho state law that conflicts with that mandate by prohibiting a wide swath of pregnancy terminations. These issues carry extraordinary privacy, safety, and reputational concerns. Defendant, meanwhile, seeks discovery related to St. Luke's history of providing pregnancy terminations. Because the central dispute in this case is over the breadth of Idaho law, and because Idaho officials maintain the right to second guess medical providers' good faith judgment about whether a pregnancy termination is necessary, producing the discovery sought raises liability concerns for the medical professionals who provide this care. Many are employed by St. Luke's Health System or provide services at their emergency rooms throughout Idaho. While the parties agree that entry of a protective order in this case is appropriate, they disagree with respect to the degree of protection to be provided to these providers and their patients.

St. Luke's seeks a protective order with a provision agreeing that the parties will not use discovery provided in this case to investigate or impose liability on those involved in providing health care where termination of the pregnancy is the appropriate treatment. It reads:

> Moreover, the Parties agree that they will not seek information or use information obtained through discovery in this case to investigate or impose liability on any person for seeking, obtaining, providing, or facilitating reproductive health care or to identify any person for such purposes.

Ex. 1 at § 11.

PLAINTIFF'S MOTION FOR ENTRY OF PROTECTIVE ORDER - 2
151028926.1 0048059-00016

The Defendant objects to that provision. For the reasons set forth below, such a provision is proper in this case.

## BACKGROUND

St. Luke's filed this action on January 14, 2025, seeking to enjoin enforcement of § 18-622 insofar as it prohibits the stabilizing care that the Emergency Medical Treatment and Labor Act ("EMTALA") requires. St. Luke's brought equitable and Declaratory Judgment Act claims against Idaho Attorney General Raúl Labrador, in his official capacity. ECF No. 1. This Court entered a preliminary injunction in this case on March 4, 2025. ECF No. 33. Per this Court's May 7, 2025, Order, Plaintiff proposed a protective order on May 21, 2025. *See* ECF No. 58. The parties have negotiated and exchanged multiple drafts since that time, but have been unable to agree on a protective order. Declaration of Wendy J. Olson ("Olson Decl."), Exs. A-D. While the parties have narrowed their disputes, they are not in agreement on one term. St. Luke's has proposed that the protective order include a provision that the parties agree they will not seek or use information obtained through discovery in this case to investigate or impose liability on any person for seeking, obtaining, providing, or facilitating reproductive health care or to identify any person for those purposes. Defendant has objected to that provision. *Id.*, Ex. C, Ex. D at 1, 2.

## ARGUMENT

Generally, the public is permitted "access to litigation documents and information produced during discovery." *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (citations omitted). However, if good cause exists, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* (quoting Fed. R. Civ. P. 26(c)(1)). When considering a motion for a non-stipulated protective order, a court proceeds in two steps. *Health Freedom Def. Fund, Inc. v. US*

*Freedom Flyers, Inc.*, No. 4:23-CV-00380-AKB, 2025 WL 1573525, at *6 (D. Idaho June 4, 2025). First, a court must determine if a "particularized harm will result from disclosure of information to the public." *Id.* (quoting *In re Roman Cath. Archbishop*, 661 F.3d at 424); *see also Moore v. Battelle Energy All., LLC*, No. 4:21-CV-00230-CRK, 2023 WL 1767391, at *4 (D. Idaho Feb. 3, 2023) ("party must demonstrate good cause that information to be produced in discovery is confidential or warrants protection"). Second, if such harm will result from disclosure, then the court proceeds to balance "the public and private interests to decide whether [maintaining] a protective order is necessary." *In re Roman Cath. Archbishop*, 661 F.3d at 424 (citation omitted). District courts "have broad discretion to determine whether a protective order is appropriate and, if so, what degree of protection is warranted." *Heitkoetter v. Domm*, No. 1:22-CV-0368-AWI-BAM, 2023 WL 122041, at *5 (E.D. Cal. Jan. 6, 2023) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). Protection of nonparty personal information, including personally identifiable information and health information, is particularly important "because disclosure of sensitive and potentially embarrassing information would cause serious injury to the nonparty, whose conduct is not at issue in the case." *Moore*, 2023 WL 1767391, at *4 (citation omitted).

      Here, the parties agree that a protective order is appropriate to allow Plaintiff to maintain the confidentiality of its business records, which may include sensitive medical and personal information of nonparties to this litigation, i.e., information regarding the care of people seeking emergency medical treatment for pregnancy complications. The purpose of the proposed protective order therefore includes providing Defendant access with relevant information while protecting the significant privacy interests of patients and providers who are not party to this litigation and to protect other confidential and proprietary business information of St. Luke's.

Defendant apparently agrees that such a protective order is appropriate but does not agree on the scope of that protective order or whether it should preclude use of information acquired in discovery for purposes other than litigation of this case. Thus, as to the second step, the Court must balance the public and private interests and determine what degree of protection is warranted.

The protective order Plaintiff seeks would ensure that material produced in discovery is not used for purposes other than the litigation in this case, i.e., to investigate or prosecute persons for violation of Idaho Code §18-622 or other criminal statutes. There is significant public interest in protecting third parties from collateral criminal or administrative consequences where information is disclosed solely in litigation in which they are not involved. *See, e.g.*, *United States v. Heine*, 314 F.R.D. 498 (D. Or. 2016) (the State generally cannot use civil discovery to build a criminal case).

In addition, until recently, reproductive health information was afforded extra protection by federal regulation. 45 C.F.R. § 164.502(a)(5)(iii) (prohibiting a covered health care entity from disclosing protected health information potentially related to reproductive health care information if the information will be used to conduct a criminal, civil or administrative investigation of any person for the mere act of, inter alia, providing or facilitating reproductive health care). This regulation was declared invalid in *Purl v. HHS*, 787 F.Supp.3d 284 (N.D. Tex. June 18, 2025), not because its premise was flawed, but because the court determined that HHS acted in excess of its statutory jurisdiction when promulgating the regulation. *Id.* at 306.

This Court should order such protection here because of the important privacy interests at stake and because it is necessary to prevent the use of indirect evidence obtained in this case for impermissible purposes. Two provisions of the proposed protective order achieve these

objectives. First, the end of the first numbered section, titled "Purposes and Limitations," provides that "Notwithstanding the foregoing, all information produced or disclosed in the above captioned action shall be used solely for the prosecution or defense (including any appeal) of this action and shall not be used for any other purpose." After considerable negotiation, the Defendant agreed to this provision. Olson Decl., Ex. C at 2.[1]

Second, the section titled "Seeking Medical Records" provides that "the parties agree that they will not seek information or use information obtained through discovery in this case to investigate or impose liability on any person for seeking, obtaining, providing, or facilitating reproductive health care or to identify any person for such purposes." Defendants do not agree to this provision. *Id.*, Ex. A at 2-3; Ex. C at 2; Ex. D. But this latter provision is particularly important because the parties dispute the scope and conflict between EMTALA and Idaho Code § 18-622, which provides both criminal and administrative liability for medical professionals who violate—or attempt to violate—the statute. I.C. § 18-622(1). Plaintiff simply seeks assurances that its providers will not be prosecuted or be subject to administrative liability merely because St. Luke's has brought this constitutional challenge.

Those concerns are not speculative or hypothetical. Defendant has propounded very broad discovery seeking, for example, information about every instance since June 24, 2022, the date of the United States Supreme Court decision in *Dobbs v. Jackson Women's Health*

---

[1] The Court should not hesitate to approve this agreed-upon provision, which protects significant patient privacy interests. Disclosure of personal medical information is well recognized as being particularly harmful; courts thus routinely recognize the need for a protective order for medical records. *See e.g., Pizzuto v. Tewalt*, 2024 WL 4417419, at *3-4 (D. Idaho Oct. 4, 2024); *Polk v. Swift*, 339 F.R.D. 189, 196-97 (D. Wyo. 2021); *State Farm Mut. Auto. Ins. Co. v. Kugler*, 840 F. Supp.2d 1323, 1328 (S.D. Fla. 2011). And the privacy interests at stake here are particularly weighty, as the information regarding medical care covered by this provision is among the most sensitive kind of personal information—reproductive health care information.

PLAINTIFF'S MOTION FOR ENTRY OF PROTECTIVE ORDER - 6
151028926.1 0048059-00016

*Organization*, 597 U.S. 215 (2022), in which a patient sought treatment from St. Luke's and received an abortion to stabilize their emergency medical condition. Olson Decl., Ex. E. Setting aside the overbreadth, vagueness and ambiguity of this request, responsive documents would potentially identify providers whose conduct Defendant believes is proscribed by Idaho Code § 18-622. Whether or not the deputy attorneys general assigned to this case would prosecute or administratively handle license revocations, they should not be allowed to even provide the identity of providers involved or language from St. Luke's medical records describing termination of a pregnancy that could be considered an abortion under Idaho Code § 18-622. Further, absent the sought protection, providers may be chilled from participating in the litigation.

Finally, Plaintiff's proposed limitation on the use of information disclosed in this litigation for investigation or enforcement does not prevent the Attorney General's office from independently investigating or enforcing Idaho law against anybody if it has an independent basis for such action. It merely vindicates institutions' ability to bring constitutional claims like those involved in this suit without facing the chill of retaliatory enforcement action, which is plainly within the public interest.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter the protective order attached as **Exhibit 1**.

DATED: November 11, 2025         STOEL RIVES LLP

/s/ Wendy J. Olson
Wendy J. Olson
Alaina Harrington

JENNER & BLOCK LLP

/s/ Lindsay C. Harrison
Lindsay C. Harrison
Jessica Ring Amunson
Ruby C. Giaquinto
Sophia W. Montgomery

*Attorneys for Plaintiff*

PLAINTIFF'S MOTION FOR ENTRY OF PROTECTIVE ORDER - 8
151028926.1 0048059-00016

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of November, 2025, I served a full, true, and correct copy of the foregoing on the parties hereto in the manner set forth below:

| | |
|---|---|
| Brian V. Church<br>Office of the Attorney General, Civil Litigation Division<br>954 W. Jefferson St., 2nd Floor<br>P.O. Box 83720<br>Boise, ID 83702-0010 | [ ] Via U.S. Mail<br>[ ] Via Facsimile<br>[ ] Via Overnight Mail<br>[ ] Via Hand Delivery<br>[X] Via Email<br>     *brian.church@ag.idaho.gov* |
| David J. Myers<br>Office of the Attorney General<br>P.O. Box 83720<br>Boise, ID 83720-0010 | [ ] Via U.S. Mail<br>[ ] Via Facsimile<br>[ ] Via Overnight Mail<br>[ ] Via Hand Delivery<br>[X] Via Email<br>     *david.myers@ag.idaho.gov* |

/s/ *Wendy J. Olson*
Wendy J. Olson